1  MCNUTT LAW FIRM, P.C.
   Daniel R. McNutt, Esq., Bar No. 7815
2  Matthew C. Wolf, Esq., Bar No. 10801
3  Mark D. Hesiak, Esq. Bar No. 12397
   11441 Allerton Park Drive, Suite 100
4  Las Vegas, Nevada 89135
   Tel.: (702) 384-1170 / Fax.: (702) 384-5529
5  drm@mcnuttlawfirm.com
   mcw@mcnuttlawfirm.com
6  mdh@mcnuttlawfirm.com
7  *Counsel for LVMPD Defendants*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**

| EMANUEL BELTRAN, individually, | Case No.: 2:26-cv-00033-APG-MDC |
|---|---|
| Plaintiff, | |
| v. | **Motion for Partial Judgment on the Pleadings** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the state of Nevada; LVMPD OFFICER MARK ESHE; LVMPD OFFICER BRANDON SORENSON (P#19306); LVMPD OFFICER WILLIAM LOPEZ (P#17326); LVMPD OFFICER VEGAS (P#17130); LVMPD OFFICER JACOB CASTILE, and DOE OFFICERS I through X, inclusive, | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 12(c), Defendants Las Vegas Metropolitan Police Department (LVMPD or Metro), LVMPD Officer Mark Eshe, LVMPD Officer Brandon Sorenson, LVMPD Officer William Lopez, LVMPD Officer Vegas, and LVMPD Officer Jacob Castile respectfully move for judgment on the pleadings on Plaintiff Emanuel Beltran's Complaint filed on December 17, 2025 (Dkt. 1-2). This Court should dismiss (1) the state and federal First Amendment claims against all Defendants; (2) all constitutional claims as against Officer Sorenson, Officer Lopez, Officer Vegas, and Officer Castile; and (3) the negligent hiring, training, and supervision claim, the federal and state constitutional claims, and the battery claim as against Metro.

## I. Introduction.

A complaint must do more than recite the legal conclusion that a violation of legal rights has occurred; it must plead facts supporting each element of each claim. Plaintiff's Complaint fails this fundamental requirement. It asserts First Amendment claims but identifies no constitutionally protected activities that allegedly caused the officers' actions. It seeks to hold Metro liable under *Monell* but alleges no specific policy, custom, or training beyond boilerplate recitations. And it asserts battery and state constitutional claims against Metro based only on the bare conclusion that Metro "knew or should have known" its officers would commit intentional actions.

Legal conclusions devoid of factual allegations cannot survive a motion to dismiss. The Complaint's inadequacy is not a close call. Plaintiff was walking away from an intersection and heading to a parking garage when the events at issue allegedly occurred. Turning around and heading to a parking garage to leave the area is not constitutionally protected expressive conduct under the First Amendment. And the formulaic allegations against Metro are precisely the sort of conclusory assertions that *Twombly* and *Iqbal* forbid. For these reasons and others outlined more below, Defendants respectfully request the dismissal of (1) the state and federal First Amendment claims against all Defendants; (2) all constitutional claims as against Officer Sorenson, Officer Lopez, Officer Vegas, and Officer Castile; and (3) the negligent hiring, training, and supervision claim, the federal and state constitutional claims, and the battery claim as against Metro.

## II. Factual Background.

When considering a motion for judgment on the pleadings, courts construe the complaint's well-pleaded factual allegations and all reasonable inferences in the light most favorable to the nonmovant.[1] Although Metro disputes and denies Plaintiff's allegations, the following factual summary is consistent with the Rule 12(c) standard of review.

Most of the allegations in Plaintiff's Complaint are irrelevant to this specific action because they focus on other nonparties. For example, paragraphs 24–35 allege events supposedly occurring before Eshe's encounter with Plaintiff. Likewise, paragraphs 49–58 allege events not involving

---

[1] *See, e.g., Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1026 (9th Cir. 2025).

Plaintiff.  The allegations related to Plaintiff are sparse yet straightforward.

The Complaint alleges that Plaintiff went downtown not to protest but to have dinner and later decided to watch and participate in the protests.[2]  Allegedly, Eshe shot Plaintiff in the legs with pepper balls as Plaintiff was walking away from the south corner of Fremont St. and Eighth St.[3]  Afterward, Plaintiff washed his face at a mini mart and then re-entered the unlawful protests, supposedly to retrieve his vehicle from a parking garage.[4]  Plaintiff was then arrested with others in the area.[5]  Plaintiff's arrest occurred after Metro had read four dispersal orders over loudspeakers, according to a declaration of arrest quoted in the Complaint.[6]  Plaintiff denies having been in the area of the dispersal orders or having known of their existence before his arrest.[7]

The Complaint asserts the following claims for relief:

| | Claim | Citation |
|---|---|---|
| 1. | 42 U.S.C. § 1983 First Amendment of the U.S. Constitution (Violation of Plaintiff's Right to Peaceably Assemble, Freedom to Petition Government for Redress of Grievances, Freedom of Association, and Speech – First Amendment Retaliation against LVMPD OFFICER MARK ESHE; LVMPD OFFICER BRANDON SORENSON, LVMPD OFFICER WILLIAN LOPEZ, LVMPD OFFICER VEGAS, LVMPD OFFICER JACOB CASTILE, DOE OFFICERS, and LVMPD) | ¶¶ 68–78 |
| 2. | Violation of Article I, Section 9 of the Nevada Constitution (Violation of Plaintiff's Freedom of Speech – Retaliation – against LVMPD OFFICER MARK ESHE; LVMPD OFFICER BRANDON SORENSON, LVMPD OFFICER WILLIAN LOPEZ, LVMPD OFFICER VEGAS, LVMPD OFFICER JACOB CASTILE, DOE OFFICERS, and LVMPD) | ¶¶ 79–89 |
| 3. | Violation of Article I, Section 10 of the Nevada Constitution (Violation of Plaintiff's Right to Peaceably Assemble, and Freedom to Petition Government for Redress of Grievances – Retaliation – against LVMPD OFFICER MARK ESHE; LVMPD OFFICER BRANDON SORENSON, LVMPD OFFICER WILLIAN LOPEZ, LVMPD OFFICER VEGAS, LVMPD OFFICER JACOB CASTILE, DOE OFFICERS, and LVMPD) | ¶¶ 90–100 |

---

[2] Compl. ¶¶ 21–23; ¶¶ 36–39.
[3] Compl. ¶ 41; ¶ 45.
[4] Compl. ¶¶ 46–49.
[5] Compl. ¶¶ 59–63.
[6] Compl. ¶ 65.
[7] Compl. ¶¶ 66–67.

| Claim | Citation |
|---|---|
| 4. 42 U.S.C. § 1983 Fourth and Fourteenth Amendments of the U.S. Constitution (Excessive Use of Force Against LVMPD OFFICER MARK ESHE; DOE OFFICERS and LVMPD) | ¶¶ 101–110 |
| 5. Violation of Article I, Sections 6, 8, and 18 of the Nevada Constitution; (Excessive Use of Force Against LVMPD OFFICER MARK ESHE; DOE OFFICERS, and LVMPD) | ¶¶ 111–118 |
| 6. 42 U.S.C. § 1983 Fourth and Fourteenth Amendments of the U.S. Constitution (Wrongful Arrest Without Probable Cause Against LVMPD OFFICER BRANDON SORENSON, LVMPD OFFICER WILLIAN LOPEZ, LVMPD OFFICER VEGAS, LVMPD OFFICER JACOB CASTILE, DOE OFFICERS, and LVMPD) | ¶¶ 119–127 |
| 7. Violation of Article I, Section 8 and 18 of the Nevada Constitution (Wrongful Arrest Without Probable Cause Against LVMPD OFFICER BRANDON SORENSON, LVMPD OFFICER WILLIAN LOPEZ, LVMPD OFFICER VEGAS, LVMPD OFFICER JACOB CASTILE, DOE OFFICERS, and LVMPD) | ¶¶ 128–137 |
| 8. Battery Against LVMPD OFFICER MARK ESHE, LVMPD OFFICER VEGAS, DOE OFFICERS, and LVMPD | ¶¶ 138–146 |
| 9. Negligent Hiring, Supervision, and Training Against LVMPD | ¶¶ 147–154 |

This Court should dismiss (1) the state and federal First Amendment claims against all Defendants; (2) all constitutional claims as against Officer Sorenson, Officer Lopez, Officer Vegas, and Officer Castile; and (3) the negligent hiring, training, and supervision claim, the federal and state constitutional claims, and the battery claim as against Metro.

### III. STANDARD OF REVIEW.

Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed (i.e., once the complaint and all answers are filed, provided that no counterclaims or cross-claims exist), so long as the motion does not delay the trial.[8] Here, all defendants have answered, so the pleadings are closed. Additionally, a trial date has not yet been set.

---

[8] Fed. R. Civ. P. 12(c); *see also Sky L. Grp. v. Paul Padda L., PLLC*, No. 2:23-CV-1793-CDS-MDC, 2025 WL 961517, at *2 (D. Nev. Feb. 25, 2025); *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005).

A Rule 12(c) motion tests the legal sufficiency of the opposing party's pleadings just as a Rule 12(b)(6) motion does; the only difference is timing.[9] The standard of review under Rule 12(c) differs depending on whether the claimant or the defendant is the movant.

When a plaintiff moves for judgment on the pleadings, the court asks whether the complaint and the defendant's admissions to the allegations entitle the plaintiff to judgment as a matter of law.[10]  For example, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) reversed the entry of offensive judgment on the pleadings because the defendant expressly denied a key fact that the lower court accepted as true.

But when, as here, a defendant moves for judgment on the pleadings, the Rule 12(c) motion is treated the same as a Rule 12(b)(6) motion.[11]  Defensive judgment on the pleadings is appropriate when, even after accepting all the nonmovant's well-pleaded factual allegations as true, the movant is nonetheless entitled to judgment as a matter of law.[12]  The Ninth Circuit will affirm defensive judgment on the pleadings if the challenged pleading lacks sufficient factual allegations to support a viable legal claim.[13]  For example, *Alday v. Raytheon Co.*, 693 F.3d 772, 795 (9th Cir. 2012)

---

[9] *See, e.g., Johnson v. Gen. Dynamic Info. Tech.*, No. 2:24-CV-02033-CDS-EJY, 2025 WL 1445406, at *3 (D. Nev. May 19, 2025) (quoting *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x 734 (9th Cir. 2008)); *see also Honchariw v. Cnty. of Stanislaus*, 530 F. Supp. 3d 939, 944 (E.D. Cal. 2021) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

[10] *See, e.g., United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (quoting 61A Am. Jur. 2d Pleading § 497); *see also Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021); *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019); *Oriental Republic of Uruguay v. Italba Corp.*, 606 F. Supp. 3d 1250, 1258 (S.D. Fla. 2022); *Atl. Specialty Ins. Co. v. Bindea*, 632 F. Supp. 3d 681, 694 (W.D. Va. 2022); *Allstate Ins. Co. v. D'Arienzo*, 530 F. Supp. 3d 274, 281 (E.D.N.Y. 2021).

[11] *See, e.g., Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 527 F. Supp. 3d 1142, 1146 (N.D. Cal. 2021) (quoting *Dworkin*, 867 F.2d at 1192; citing *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)).

[12] *See, e.g., Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020); *see also Bryant v. Madison Mgmt. Servs., LLC*, No. 2:20-CV-00594-CDS-EJY, 2025 WL 928868, at *2 (D. Nev. Mar. 27, 2025) (quoting *Wildseed Mobile LLC v. Google LLC*, 676 F. Supp. 3d 766, 772 (N.D. Cal. 2023); citing *New York v. Micron Tech., Inc.*, 2009 WL 29883 (N.D. Cal. Jan. 5, 2009)).

[13] *See, e.g., Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886 (9th Cir. 2018) (quoting *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017)) (affirming a Rule 12(c) dismissal).

1 affirmed the entry of defensive judgment on the pleadings because the complaint lacked sufficient facts to support claims for punitive or extra-contractual damages.

### IV. LEGAL ARGUMENT.

**A.     The State and Federal First Amendment Claims Warrant Dismissal**.

Claims ## 1–3 are state and federal First Amendment claims.[14]  Plaintiff alleges that the police shot him with pepper balls and arrested him in retaliation for supposedly engaging in constitutionally protected activity.  To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he engaged in constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.[15]  The Nevada Supreme Court would likely apply this standard to the state claims, as Nevada courts have previously looked to federal law for guidance on First Amendment issues.[16]

Plaintiff's "retaliation claims are conclusory and" do "not plead all of the required elements."[17]  The pertinent inquiry for the first element is whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it.[18]  According to Plaintiff, he "had no intention of participating in any protest when he arrived in downtown Las Vegas"[19] but later decided to "witness[] and participat[e] in what he believed to be an historical event."[20]  Plaintiff alleges that he was shot with pepper balls as he was walking away from the corner of Fremont St. and Eighth St.[21]  He further asserts that the police

---

[14] Compl. ¶¶ 68–100.
[15] *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020).
[16] *See, e.g., Woolfe v. Cnty. of Washoe*, 138 Nev. 997, 521 P.3d 427, 2022 WL 17592186, at *1 (Nev. App. Dec. 12, 2022); *see also Dean v. State of Nevada Dep't of Corr.*, 134 Nev. 929, 2018 WL 2059549, at *2 (Nev. App. April 26, 2018).
[17] *Smith v. City of Marina*, 709 F. Supp. 3d 926, 934 (N.D. Cal. 2024).
[18] *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. State of Wash.*, 418 U.S. 405, 411 (1974)); *see also Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).
[19] Compl. ¶ 21.
[20] Compl. ¶ 36.
[21] Compl. ¶ 41; ¶ 45 ("At approximately 10:29:00, Mr. Beltran began to walk away. Officer Eshe again aimed his weapon directly at Mr. Beltran as he was walking away, fired three (3) more

1  arrested him as he stood near Seventh St. and Bridger Ave. en route to retrieving his vehicle from a
2  parking garage and "ponder[ing] where to go."[22]  Those allegations do not satisfy the first element,
3  that is, the constitutionally protected activity element.
4      Walking away from an intersection and retrieving one's vehicle from a parking garage are
5  not constitutionally protected expressions.  Neither activity conveys any message whatsoever, let
6  alone one with a significant likelihood of being understood as a form of constitutionally protected
7  expressive conduct.  Even more, the decision to retrieve a vehicle suggests the opposite of ongoing
8  protest activity: Plaintiff had finished whatever he was doing and was heading home.  Courts have
9  dismissed First Amendment claims for precisely this reason.  The plaintiff in *Adams v. Deloria*, 443
10  F. Supp. 3d 1093, 1103 (N.D. Cal. 2020) alleged "no instance of him speaking to team supporters."
11  The one in *Gagnon v. Nevada ex rel. Dep't of Pub. Safety*, No. 2:13-CV-00528-JAD, 2015 WL
12  5062382, at *5 (D. Nev. Aug. 25, 2015) "alleged [not] a single protected communication ...."
13      The Complaint also fails to allege facts establishing that retaliating against protected activity
14  was a substantial or motivating factor for the alleged pepper balls and arrest.  The third prong re-
15  quires a causal relationship between protected conduct and the adverse action.[23]  A plaintiff must
16  show that retaliatory animus was a but-for cause of the adverse action, meaning that the action
17  would not have been taken absent that motive.[24]  The Complaint "must allege sufficient facts
18  demonstrating a nexus between the adverse action by the defendant and the plaintiff's protected
19  speech."[25]  The Complaint alleges in conclusory fashion, without providing facts, that the police
20  shot him with pepper balls and arrested him to retaliate against constitutionally protected activity.[26]

---

pepper balls at Mr. Beltran, and struck Mr. Beltran in the legs with all three (3) of these shots.").

[22] Compl. ¶ 59; ¶ 48 ("From that point, Mr. Beltran's goal was to get back to his vehicle at the Neonopolis Parking Garage. Fearing more attacks by police, Mr. Beltran attempted to travel slowly and around those areas where he believed most of the police were congregating."); *Id.* ¶¶ 59–63.

[23] *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022); *see also Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1194 (D. Nev. 2009).

[24] *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)); *see also Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).

[25] *Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 954 (N.D. Cal. 2014).

[26] Compl. ¶¶ 69–71; ¶¶ 80–82; ¶¶ 91–93.

**B.     The Constitutional Claims Fail Against Castile, Lopez, Sorenson, and Vegas**.

Group-pleading allegations cannot support a viable § 1983 claim. "[T]o establish individual liability under 42 U.S.C. § 1983, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"[27] Doing so necessitates alleging "facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant."[28] "In other words, a plaintiff may not attribute general liability for an alleged wrong to a group of defendants but rather must make 'individualized' allegations."[29]

The constitutional claims lump together Castile, Lopez, Sorenson, and Vegas without alleging facts specifying each officer's alleged acts or omissions. Paragraphs 71, 82, 93, and 120 do not differentiate between Castile, Lopez, Sorenson, and Vegas, as shown by paragraph 71 below:

> Officer Sorenson, Officer Lopez, Officer Vegas, Officer Castile, and DOE Officers exhibited deliberate indifference to Plaintiff's freedoms to peaceably assemble, petition his government for a redress of grievances, freedom of association, and freedom of speech rights by detaining and arresting Plaintiff at 7th Street and Bridger Avenue. These actions were in retaliation to Mr. Beltran standing with the protesters and telling an officer "That's messed up. He didn't do anything," exercising his First Amendment rights to peaceably assemble, petition government for redress of grievances, associate with the protesters, and speech.

A well-pleaded complaint should "support each claim with factual allegations about each defendant's actions."[30] These group-pleading deficiencies warrant dismissing the constitutional claims.

**C.     The Federal Constitutional Claims Against Metro Warrant Dismissal**.

Plaintiff's federal constitutional claims against Metro must be dismissed.[31] The reason is straightforward: these claims allege no facts sufficient to support municipal liability. It is blackletter law that a municipality cannot be held liable for its employees' actions under respondeat superior

---

[27] *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676).

[28] *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

[29] *Pasene v. Correa*, 656 F. Supp. 3d 1185, 1206 (D. Haw. 2023).

[30] *Sternberg v. Warneck*, No. 2:23-CV-01466-APG-EJY, 2024 WL 4804826, at *10 (D. Nev. Nov. 14, 2024).

[31] Claim # 1, Compl. ¶¶ 68–78; Claim # 4, *Id.* ¶¶ 101–110; Claim # 6, *Id.* ¶¶ 119–127.

1   or vicarious liability.[32] A viable *Monell* claim must allege that the local government had a deliberate
2   policy, custom, or practice that was the moving force behind the constitutional violation.[33] A single
3   instance of unlawful conduct is generally insufficient to state a municipal liability claim.[34]

4       A *Monell* claim cannot simply recite the elements of a cause of action; it must contain suf-
5   ficient factual allegations establishing a plausible right to relief.[35] Conclusory allegations that a
6   municipality has a policy or practice of violating constitutional rights do not provide the defendant
7   with fair notice of the claim.[36] For example, *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1155
8   (9th Cir. 2021) dismissed a *Monell* claim because none of the conclusory allegations regarding the
9   county's alleged unconstitutional policy, practice, custom, or failure to train provided sufficient
10  factual support for *Monell* liability. *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir.
11  2011) dismissed a *Monell* claim that alleged no facts showing that the constitutional deprivation
12  resulted from a custom or practice or that such custom or practice was the moving force behind the
13  deprivation. *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1064 (D. Ariz. 2020) dismissed a *Monell*
14  claim that alleged in conclusory fashion that the city maintained policies fostering lawlessness.
15  *Rasku v. City of Ukiah*, 460 F. Supp. 3d 934, 945 (N.D. Cal. 2020) dismissed a *Monell* claim based
16  on conclusory allegations that a policymaker knew of and approved the unlawful conduct.

17      *Luna v. Cnty. of Riverside*, 2018 WL 7501265, at *1 (C.D. Cal. Aug. 23, 2018) dismissed a
18  failure-to-train-and-supervise *Monell* claim related to pepper balls that correctional officers fired at

---

[32] *See, e.g.*, *Williams v. Clark*, No. 2:14-CV-00414-APG-PAL, 2015 WL 6005141, at *17 (D. Nev. Oct. 14, 2015); *see also Iqbal*, 556 U.S. at 663 (vicarious liability is inapplicable to § 1983 suits).

[33] *See, e.g.*, *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (quoting *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)).

[34] *See, e.g.*, *McIntyre v. Las Vegas Metro. Police Dep't*, No. 2:24-CV-01953-APG-EJY, 2025 WL 2412428, at *4 (D. Nev. Aug. 19, 2025) (quoting *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021)).

[35] *See, e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Bini v. City of Vancouver*, 218 F. Supp. 3d 1196, 1204 (W.D. Wash. 2016) (dismissing a *Monell* claim); *Lemus v. Clark Cnty. Sch. Dist.*, No. 2:24-CV-00700-JAD-MDC, 2025 WL 1137410, at *4 (D. Nev. Apr. 10, 2025) (same).

[36] *See, e.g.*, *Hawatmeh v. City of Henderson*, No. 2:22-CV-01786-APG-DJA, 2023 WL 5796641, at *7 (D. Nev. Sept. 6, 2023); *see also Lykins v. Las Vegas Metro. Police Dep't*, No. 2:22-CV-01068-APG-BNW, 2023 WL 2717294, at *6 (D. Nev. Mar. 29, 2023).

a pre-trial detainee inside a detention facility, striking the "plaintiff directly in his left eye, breaking the orbital socket and lodging itself behind Plaintiff's eye causing serious injuries that resulted ultimately in the loss of his left eye leaving him permanently blind in his left eye." The complaint stated no facts showing that the county "engaged in a custom or policy of inaction."[37]

Although Plaintiff did not bring a standalone *Monell* claim, his federal constitutional claims seek to impose liability on Metro based on allegations of policies, practices, and procedures. These allegations are textbook examples of the formulaic, conclusory assertions that courts routinely reject. Plaintiff's federal claims simply copy and paste the following boilerplate paragraphs:

73.  The conduct of Defendant Officers was a direct consequence of LVMPD's failure to train and supervise its officers, as well as de facto policies and practices implemented, condoned, fostered and tacitly sanctioned by Defendants which reflect a willful indifference to Plaintiff's constitutional rights. The de facto policies and practices implemented, condoned, fostered and tacitly sanctioned by Defendants were a direct and proximate cause of Plaintiff's damages and injuries complained of herein.

74.  These constitutional abuses and violations of Defendant Officers were directly and proximately caused by LVMPD's implementing, condoning, fostering and tacitly sanctioning these policies and practices, as well as failing to adequately train and supervise. As a result, Defendant Las Vegas Metropolitan Police Department has failed to adequately discourage constitutional violations on the part of its officers or to monitor and discipline its officers.

Those conclusory allegations are insufficient to impose *Monell* liability.

The Complaint alleges no facts regarding the so-called "de facto" policy within Metro that purportedly "implemented, condoned, fostered and tacitly sanctioned"[38] constitutional violations. As in *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 935 (S.D. Cal. 2022), the Complaint "does not point to any explicit official policy promulgated by [LVMPD] allowing for non-lethal force to be used indiscriminately for crowd control purposes." "To the extent [Plaintiff] is relying on her own alleged experiences to support her claim, a single incident is insufficient to show a widespread custom or practice."[39] The Complaint also alleges no facts regarding the purportedly inadequate

---

[37] *Luna*, 2018 WL 7501265, at *2.
[38] Compl. ¶¶ 50–51; ¶¶ 70–71; ¶¶ 86–87; ¶¶ 102–103.
[39] *Anderson v. Las Vegas Metro. Police Dep't*, 2025 WL 403960, at *9 (D. Nev. Feb. 4, 2025).

training that Metro allegedly provided to its officers.[40]  Metro has no idea from the Complaint what de facto policy it allegedly maintained, how its training was allegedly inadequate, or how the purported de facto policy or inadequate training caused the alleged constitutional violations.

**D.     The Battery Claim Against Metro Warrants Dismissal**.

Claim # 8 is a battery claim against Metro, Eshe, and Vegas.[41]  The claim fails as against Metro for a straightforward reason: battery is an intentional tort, and Nevada law imposes strict requirements before an employer may be held liable for an employee's intentional misconduct.  Nev. Rev. Stat. § 41.745(1) governs when a Nevada employer is liable for an employee's intentional conduct.[42]  The statute applies to governmental employers.[43]  It reads as follows:

> An employer is not liable for harm or injury caused by the intentional conduct of an employee if the conduct of the employee:
>
> (a) Was a truly independent venture of the employee;
>
> (b) Was not committed in the course of the very task assigned to the employee; and
>
> (c) Was not reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of his or her employment.
>
> For the purposes of this subsection, conduct of an employee is reasonably foreseeable if a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury.

The statute "requires an element of foreseeability, in effect raising the standard and making employers liable only when an employee's intentional conduct is reasonably foreseeable under the circumstances."[44]  In *Wood v. Safeway, Inc.*, 121 Nev. 724, 740, 121 P.3d 1026, 1037 (2005), an entity was "not liable for the intentional conduct of its employee, Ronquillo–Nino," because "it was not reasonably foreseeable that Ronquillo–Nino would sexually assault a Safeway employee."

The battery claim alleges that "[a]t all times LVMPD knew or should have known that these

---

[40] Compl. ¶ 52; ¶ 64; ¶ 72; ¶ 80; ¶ 88; ¶ 97; ¶ 104; ¶ 112.
[41] Compl. ¶¶ 138–146.
[42] *See, e.g.*, *Anderson v. Mandalay Corp.*, 131 Nev. 825, 829, 358 P.3d 242, 245 (2015).
[43] *See, e.g.*, *ASAP Storage, Inc. v. City of Sparks*, 123 Nev. 639, 655, 173 P.3d 734, 745 n.57 (2007); *see also Phipps v. Clark Cnty. Sch. Dist.*, 164 F. Supp. 3d 1220, 1228 (D. Nev. 2016).
[44] *Wood v. Safeway, Inc.*, 121 Nev. 724, 739, 121 P.3d 1026, 1036 (2005).

officers were likely to commit battery."[45]  That bare legal conclusion cannot be afforded the assumption of truth.[46]  "[M]ere recitals of a claim's elements, supported only by conclusory statements, are insufficient to survive a dismissal challenge."[47]  Like the plaintiff in *Flynn v. Nevada ex rel. Nevada Dep't of Corr.*, No. 2:22-CV-01753-JAD-NJK, 2023 WL 12117177, at *9 (D. Nev. Aug. 27, 2023), Plaintiff has failed to state a viable claim making Metro liable for intentional misconduct under § 41.745, warranting the dismissal of the battery claim.

E. **The State Constitutional Claims Against Metro Warrant Dismissal**.

Plaintiff's state constitutional claims against Metro fare no better.[48]  Like the federal constitutional claims, the state constitutional claims cut and paste the following boilerplate allegation regarding vague policies and procedures:

> 84. The conduct of Defendant Officers was a direct consequence of LVMPD's failure to train and supervise its officers, as well as de facto policies and practices implemented, condoned, fostered and tacitly sanctioned by Defendants which reflect a willful indifference to Plaintiff's constitutional rights. The de facto policies and practices implemented, condoned, fostered and tacitly sanctioned by Defendants were a direct and proximate cause of Plaintiff's damages and injuries complained of herein.
>
> 85. These constitutional abuses and violations of Defendant Officers were directly and proximately caused by LVMPD's implementing, condoning, fostering and tacitly sanctioning these policies and practices, as well as failing to adequately train and supervise. As a result, Defendant Las Vegas Metropolitan Police Department has failed to adequately discourage constitutional violations on the part of its officers or to monitor and discipline its officers.

The above paragraphs contain legal conclusions without supporting factual allegations.  Additionally, the state constitutional claims involve intentional actions by the officers: allegedly pepper-balling Plaintiff and arresting him to retaliate against alleged free speech.  The state constitutional claims allege no facts that, if true, could establish that Metro foresaw such intentional actions,

---

[45] Compl. ¶ 143.

[46] *See, e.g., Flynn v. Nevada ex rel. Nevada Dep't of Corr.*, No. 2:22-CV-01753-JAD-NJK, 2023 WL 12117177, at *9 (D. Nev. Aug. 27, 2023).

[47] *Correa v. Las Vegas Metro. Police Dep't*, No. 2:16-CV-01852-JAD-NJK, 2016 WL 7320879, at *4 (D. Nev. Dec. 15, 2016) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[48] Claims ## 2–3, Compl. ¶¶ 79–100; Claim # 5, *Id.* ¶¶ 111–118; Claim # 7, *Id.* ¶¶ 128–137.

thereby further warranting the dismissal of those claims as against Metro.

F.     **The Negligence Claim Against Metro Warrants Dismissal.**

Claim # 9 is a negligent hiring, training, and supervision claim against Metro.[49] The claim warrants dismissal because it consists of legal conclusions without supporting factual allegations. Legal conclusions and "formulaic recitations of the elements of a cause of action" do not satisfy *Twombly* and *Iqbal*.[50] A negligent hiring, training, and supervision claim is no exception to that rule: conclusory "allegations are not enough to survive a motion to dismiss" such a claim.[51] Plaintiff's negligent hiring, training, and supervision claim does not satisfy *Twombly* and *Iqbal*.

The claim exemplifies precisely what *Twombly* and *Iqbal* forbid: legal conclusions dressed up as factual allegations. Below is the entirety of the claim:

147.   Plaintiff repeats and realleges by reference all prior paragraphs as if fully set forth herein.

148.   Defendant LVMPD had a duty to properly hire, train, and supervise its police officers, including field training officers, to ensure compliance with official LVMPD policies and constitutional standards regarding the freedom of speech, freedom to lawfully assemble, freedom to petition the government for redress of grievances, due process, and the proper use of force against citizens.

149.   Defendant LVMPD directly caused the violations suffered by Plaintiff and is liable for the damages suffered by Plaintiff as a result of the conduct of Defendant LVMPD Officers.

150.   The conduct of Defendant Officers was a direct consequence of LVMPD's failure to train and supervise its officers, as well as de facto policies and practices implemented, condoned, fostered and tacitly sanctioned by Defendants which reflect a willful indifference to Plaintiff's constitutional rights. The de facto policies and practices implemented, condoned, fostered and tacitly sanctioned by Defendants were a direct and proximate cause of Plaintiff's damages and injuries complained of herein.

151.   These constitutional abuses and violations of Defendant Officers were directly and proximately caused by LVMPD's implementing, condoning, fostering and tacitly sanctioning these policies and practices, as well as failing to adequately train and supervise. As a result, Defendant Las Vegas Metropolitan Police Department has

---

[49] Compl. ¶¶ 147–154.

[50] *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("conclusory allegations" cannot "defeat a motion to dismiss" under Rule 12(c)).

[51] *Lykins v. Las Vegas Metro. Police Dep't*, No. 2:22-CV-01068-APG-BNW, 2023 WL 2717294, at *4 (D. Nev. Mar. 29, 2023) (dismissing a negligent hiring, training, and supervision claim).

        failed to adequately discourage constitutional violations on the part of its officers or to monitor and discipline its officers.

152.    As a direct and proximate result of LVMPD's negligent hiring, supervision, and training, Plaintiff was shot with pepper balls, hit with tear gas, and unlawfully arrested, causing him to suffer physical injury, mental and emotional injury, mental anguish, suffering, humiliation, and embarrassment.

153.    Plaintiff has suffered damages in excess of $15,000.

154.    Plaintiff has been required to retain the services of attorneys to prosecute this action and is entitled to reasonable attorney fees and costs.

The above boilerplate allegations lack supporting factual allegations. As for negligent hiring, the claim "fails to allege that LVMPD knew or should have known that" a specific officer "had certain propensities or even that LVMPD failed to conduct a background check" on a particular officer.[52] As for negligent training, the claim does not identify any negligent training provided by Metro, point out any inadequate policies or procedures belonging to Metro, or allege a nexus between Metro's training and a purported violation of Plaintiff's constitutional rights.[53]

    This claim also fails on grounds of discretionary immunity. Nevada's discretionary-act immunity, codified in Nev. Rev. Stat. § 41.032, immunizes governmental action that (1) "involve[s] an element of individual judgment or choice[,]" and (2) is "based on considerations of social, economic, or political policy."[54] Training officers on using pepper balls "involve[s] an element of choice" and "is subject to policy analysis, thus meeting" the two prongs for discretionary immunity.[55] Developing training curricula on the use of less-lethal munitions involves precisely the kind

---

[52] *Walker v. Las Vegas Metro. Police Dep't*, No. 2:20-CV-01462-CDS-DJA, 2022 WL 4807275, at *5 (D. Nev. Oct. 3, 2022).

[53] *See, e.g.*, *Borenstein v. Animal Found.*, No. 2:19-CV-00985-CDS-NJK, 2023 WL 2810258, at *3 (D. Nev. Apr. 5, 2023) (dismissing a negligent hiring, training, and supervision claim because the second amended complaint "does not identify which section of Sunrise's policies and procedures was used to negligently train, supervise, or retain employees").

[54] *Paulos v. FCH1, LLC*, 136 Nev. 18, 25–26, 456 P.3d 589, 595 (2020) (quoting *Martinez v. Maruszczak*, 123 Nev. 433, 446–47, 168 P.3d 720, 729 (2007)).

[55] *Paulos*, 136 Nev. at 26, 456 P.3d at 596 (affirming the entry of summary judgment on a negligent hiring, training, and supervision claim against the Las Vegas Metropolitan Police Department based on discretionary immunity); *see also Ansara v. Maldonado*, 647 F. Supp. 3d 958, 982 (D.

of policy judgments that discretionary immunity protects, including researching and interpreting constitutional law, drafting policies, and teaching officers how to implement those policies in the field. The Complaint alleges no facts that could overcome this immunity.

## V. CONCLUSION.

This Court should dismiss (1) the state and federal First Amendment claims against all Defendants; (2) all constitutional claims as against Officer Sorenson, Officer Lopez, Officer Vegas, and Officer Castile; and (3) the negligent hiring, training, and supervision claim, the federal and state constitutional claims, and the battery claim as against Metro.

Dated February 19, 2026.

MCNUTT LAW FIRM, P.C.

*/s/ Dan McNutt*
Daniel R. McNutt, Esq., Bar No. 7815
Matthew C. Wolf, Esq., Bar No. 10801
Mark D. Hesiak, Esq., Bar No. 12397
11441 Allerton Park Drive, Suite 100
Las Vegas, Nevada 89135
*Counsel for LVMPD Defendants*

---

Nev. 2022) (applying discretionary immunity to a negligent hiring, training, and supervision claim); *Walker v. City of N. Las Vegas*, 394 F. Supp. 3d 1251, 1278 (D. Nev. 2019) ) (same); *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) (same).

### CERTIFICATE OF SERVICE

On February 19, 2026, the undersigned served a true and correct copy of **Motion for Partial Judgment on the Pleadings** via electronic mail through the United States District Court's CM/ECF system to all persons registered to receive electronic service.

*/s/ Lisa Heller*
An Employee of McNutt Law Firm, P.C.